[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 09, 2002
THOMAS K. KAHN
CLERK

————————————————

No. 01-13312

————————————————

D. C. Docket No. 97-02200-CV-TWT-1

UNITED STATES OF AMERICA, ex rel.,
JEFFREY SCOTT CLAUSEN,

                                        Plaintiff-Appellant,

versus

LABORATORY CORPORATION OF AMERICA, INC.,

                                        Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————
**(May 9, 2002)**

Before BARKETT, HULL and KRAVITCH, Circuit Judges.

HULL, Circuit Judge:

In this qui tam action, the plaintiff-relator seeks to recover damages under the False Claims Act, 31 U.S.C. § 3729 et seq., as a result of alleged overbilling of the United States Government by the defendant medical testing company. The district court, however, twice dismissed the plaintiff's complaint for failing to provide the specificity required under Federal Rule of Civil Procedure 9(b). We affirm.

## I. BACKGROUND

A.     The Parties

This case revolves around the billing practices of the defendant, Laboratory Corporation of America, Inc., ("LabCorp"). LabCorp is an Atlanta-based company that performs medical testing services nationwide and specializes in providing testing on a contract basis to long-term care facilities ("LTCFs").[1]

LTCFs, which include nursing homes, furnish skilled and unskilled care in a residential setting to patients that are often old or disabled. Many LTCF patients participate in medical insurance programs receiving funds from the United States Government ("Government"), such as Medicaid, Medicare and the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS). Between the late

---

[1] LabCorp was formed through a merger of two other companies – Roche Biomedical Laboratories, Inc., and National Health Laboratory, Inc. – in the mid 1990s. Because LabCorp assumed all liabilities of these predecessor companies, we refer simply to LabCorp when discussing the alleged conduct of the defendant and its predecessor entities.

1980s and 1998, LabCorp provided laboratory testing services on a contract basis to at least 100 LTCFs in Georgia and at least three regional or national LTCF chains – Golden Age, Beverly, and Capital Care Management.

Plaintiff Jeffrey Scott Clausen ("Clausen") works in the medical testing industry. A resident of Georgia, he is a former employee of SmithKline Beecham Clinical Laboratories and identifies himself as a current competitor of LabCorp. He does not claim to have ever worked for LabCorp. He filed this action on behalf of the United States as a relator under the False Claims Act, entitling him to a percentage of any recoveries through judgment or settlement.

B.     The Allegations

In his complaint, Clausen alleges that LabCorp engaged in a multi-faceted, decade-long campaign to defraud the Government as a result of its testing services for LTCFs.[2] The essence of his allegations is that between the late 1980s and 1998 LabCorp performed unauthorized, unnecessary or excessive medical tests on LTCF residents who participated in Government-funded health insurance programs and then knowingly submitted bills for this work to agents of the Government,

_____

[2] Because this appeal involves motions to dismiss for failure to state a claim, we must accept the facts in Clausen's complaints as true. United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc). However, if the facts alleged do not satisfy the requirements of the Federal Rules of Civil Procedure, a claim has not been stated. Theoharous v. Fong, 256 F.3d 1219, 1226-27 (11th Cir. 2001).

3

requesting taxpayer funds to which it was not entitled.[3] Clausen also alleges that although LabCorp was entitled to receive payments for some work related to its testing services, such as blood draws and transportation costs, it overbilled for those services during this time period as a result of the improper tests it performed.

Specifically, Clausen asserts that LabCorp engaged in six "schemes" that led it to submit false claims, either electronically or manually, to the Government through a fiscal intermediary that processes health insurance claims on its behalf. Clausen identifies the schemes, which overlap each other to some extent, as involving (1) self-referral, whereby LabCorp employees would establish standing orders for particular tests, for example every month, three months or annually, without requiring physicians' orders or without regard to medical necessity, (2) patient screening, whereby LabCorp would perform screening tests to establish a baseline for its records, (3) duplicative and unnecessary testing of patients with multiple disorders, (4) unbundling of tests, whereby multiple tests were given when a single test that included all of those multiple tests could have been given, (5) duplicative billing for blood draws, whereby all duplicative and unnecessary tests included charges for blood draws, and (6) duplicative billing of trip charges,

---

[3] Clausen alleges that in 1997 and 1998 LabCorp discontinued the challenged practices after informing its LTCF clients that its actions had been improper.

whereby trip charges were assessed for unnecessary or duplicative trips or in excess of the number of actual trips made for legitimate tests.

At the core of most of these schemes is an allegation that LabCorp breached a cardinal rule of federal health insurance reimbursement policy: providers are generally entitled to be paid for medical testing only when such testing is (1) medically necessary and/or (2) done at the direction of a patient's physician. See, for example, 42 U.S.C. §§ 1395f(a), 1395x(v)(4), 1395y(a) (regarding Medicare and Medicaid testing reimbursement).

Because Clausen's appeal turns on the sufficiency of his pleadings, we first review the evolution of his complaint.

C.      Clausen's Complaint

Pursuant to the False Claims Act, which permits citizens to file suit on behalf of the United States when it is the victim of fraud and abuse, Clausen filed a complaint under seal in the United States District Court for the Northern District of Georgia on July 28, 1997. The 11-page Complaint alleged that in providing testing services to LTCFs LabCorp (1) violated the False Claims Act by knowingly submitting false claims for payment to the United States, making or using false records to do so, and conspiring to defraud the Government on such matters, 31 U.S.C. § 3729(1)-(3) (Counts I, II and III), and (2) improperly billed for services

rendered through illegal kickback and self-referral schemes, 42 U.S.C. § 1320a-7b

(Count IV).[4]

This version of the complaint alleged that LabCorp had engaged in the six

schemes, but it did not identify any LTCFs by name, include any documentary

exhibits or explain the origin of its information.[5]  After multiple requests for

extensions of time and the completion of its own investigation, the Government

informed the district court on January 18, 2000, that it declined to intervene in the

action as a matter of right, leaving Clausen to prosecute the action on its behalf.

Clausen did not serve this version of his complaint on LabCorp.

D.     Clausen's First Amended Complaint

Instead, exercising his option to amend the complaint prior to causing the

seal to be lifted with its service, Clausen filed and served upon LabCorp his First

Amended Complaint on May 10, 2000, with his current counsel added to the

pleadings.  This 23-page pleading reorganized the allegations into two counts – one

regarding violations of the False Claims Act (Count I)[6] and the other regarding

---

[4]  We do not discuss the allegations related to the Counts III or IV in this version of the complaint because Clausen omitted them from the current version of his pleadings, and they are not implicated in any issue on appeal.

[5]  We do not provide more detail regarding the initial Complaint because this pleading was never the subject of a motion before the district court and is not at issue in this appeal.

[6]  In this version of the complaint, the False Claims Act conspiracy allegation was omitted.  31 U.S.C. § 3729(a)(3).

violations of federal anti-kickback and self-referral laws (Count II). The document

offered additional support for Clausen's allegations, namely: (1) factual references

to Clausen's conversations with LabCorp employees Olin Ausburn and Jofrancis

Williams about the company's policies and procedures, (2) specific descriptions

and (in some instances) technical codes for medical tests as examples of what the

alleged false claims would have stated and a reference to the specific form on

which claims would have been submitted to Medicare ("HCFA Form-1500

(electronically or manually)"), and (3) the testing histories of three patients

identified by their initials (H.L., L.W. and M.A.) at two named LTCFs – A.G.

Rhodes Homes, Inc., in Atlanta ("Rhodes LTCF") and Social Circle Intensive Care

Facility in Social Circle, Georgia ("Social Circle LTCF").[7]

---

[7] In addition, the First Amended Complaint added a number of documentary exhibits to support its allegations, but the documents relate only to the medical tests performed, and on whom and where they were performed, and do not include any billing records of LabCorp or references to sums charged to the Government by LabCorp : (1) a roster of "[s]ome of the LabCorp employees with knowledge of, and/or responsible for implementing, administering LabCorp's LTC [long-term care] program and carrying out the schemes alleged herein, during the late 1980's through 1997" – 20 individuals working in the Atlanta area identified by name, title and dates of employment, (2) a LabCorp sales brochure describing the services it provided to LTCFs, (3) patient lists (by patient initials and room number) for three Georgia LTCFs – Rhodes LTCF, Social Circle LTCF and the Hospitality Care Center of Madison in Madison, Georgia ("Madison LTCF") – identifying each patient's standing orders, procedures or test performed and dates of service during portions of 1995-97 and the specific scheme related to each test (i.e., unnecessary "screening," "unbundling" or "duplicative"), (4) a 1997 "standing order" report from the Rhodes LTCF facility, (5) test results and physician orders for patients H.L., L.W. and M.A. at the Social Circle and Rhodes LTCFs, (6) a table showing five component tests of an annual profile test to illustrate unbundling and unnecessary tests, (7) a list of "[s]ome of LabCorp LTC clients, 1987-1997" – 40 LTCFs in Georgia listed by name and city, and three companies that allegedly had "LTC group contracts, regional & national" with

Clausen's First Amended Complaint used the patient list and standing order documents to point to specific cases of allegedly improper testing. For example, the complaint asserted that LabCorp performed "self-referred" tests on a patient at the Rhodes LTCF identified as F.C. and being in room 225 between May 1995 and March 1997. In addition, Clausen described the tests performed on patients identified as H.L., L.W. and M.A. as examples of the self-referral scheme and other schemes involving duplicative testing, annual screening and duplicative and unnecessary billing for blood draws and trip charges. These tests, along with others like them identified in the patient lists, the complaint asserted, "resulted in the submission of false claims to the United States" nationally between "the late 1980s and 1997."

While adding certain detail, the First Amended Complaint did not include any further allegations about what other unnamed LTCFs might have been involved in this arrangement, the specific dates or amounts of any claims submitted to the Government, or copies or detailed sources of information about the claims themselves.

E.    LabCorp's First Motion to Dismiss

---

LabCorp, and (8) a sample of a LabCorp testing form from the Monroe Nursing Home served by LabCorp.

LabCorp moved to dismiss Clausen's First Amended Complaint on July 31, 2000, arguing that it failed to meet the required standard for pleading fraud under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). The district court granted this motion as to Count I, ruling that (1) Rule 9(b)'s requirement that fraud be pleaded with particularity applies to False Claims Act actions, (2) Rule 9(b)'s pleading standard should not be relaxed here, and (3) Clausen failed to meet Rule 9(b)'s standard because he alleged no specific facts regarding the actual submission or timing of false claims and relied on conclusory statements, but that (4) Clausen could amend his complaint and attempt to come into compliance with the rule. United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 198 F.R.D. 560 (N.D. Ga. 2000).[8]

The district court pointed out that Clausen's complaint makes relatively detailed statements about the alleged schemes carried out by LabCorp. The district court noted, however, that Clausen only ends the description with a conclusory summation that typically states "these practices resulted in the submission of false claims for payment to the United States." Id. at 563. The district court thus concluded, "Plaintiff has failed to identify a single claim that was actually

---

[8] The district court declined to rule on the motion to dismiss Count II prior to Clausen's filing of his Second Amended Complaint, which ultimately omitted Count II.

9

submitted pursuant to the allegedly fraudulent schemes identified in the Amended Complaint. Essentially, Plaintiff has set out the process by which Defendants could have produced false claims, but provides no facts that this process did in fact result in the <u>submission</u> of false claims." <u>Id.</u> (emphasis in original).

F.      Clausen's Second Amended Complaint

On December 29, 2000, Clausen filed his Second Amended Complaint, which deleted Count II and sought to respond to the district court's concerns about Count I.

Specifically, the 28-page revised pleading explained at greater length that the patient lists included evidence of the various schemes. This time Clausen attached one blank "Health Insurance Claim Form" known as a Health Care Financing Administration Form 1500. Health care providers complete Form 1500, either electronically or manually, when they seek reimbursement from a federal health insurance program. This sample Form 1500 contains Section 24, which has blanks for the date, type and place of service, medical test codes (known as the CPT codes) and diagnosis codes. Clausen also attached a table of medical test codes, which lists different types of tests, such as glucose, cholesterol, hematocrit and urinalysis.

More importantly, Section 24 of Form 1500 also has blanks for the provider to list the financial charges for each separate service or test. This sample Form 1500 also contains Sections 28, 29 and 30, also in blank, for total charges, amount paid and balance due, respectively.

The revised pleading also changed the allegations that the schemes had simply "resulted in the submission of false claims" via manual or electronic Form 1500s to intermediaries to state that electronic versions were submitted "for the services provided on the date of service or within a few days thereafter."[9] Finally, Clausen also described how certain examples of improper testing would have been identified on Form 1500s, including additional references to specific medical test codes.

The Second Amended Complaint suggested one can understand many details about the alleged false claims by (1) looking at one of the three LTCF patient lists identifying what tests each patient was receiving,[10] (2) obtaining the appropriate

---

[9] This language appears to apply to all six schemes. It is mentioned explicitly in regard to the self-referral and patient screening schemes, and incorporated through examples cross-referenced in descriptions of the duplicative testing and unbundling schemes. Finally, the blood draw and trip charge schemes, which also cross-referenced other schemes with this same alleged timing of submission, include assertions that bills for these practices were submitted on the same dates as the bills for tests involved in the previous four schemes.

[10] In the Second Amended Complaint, the title of the column on the patient lists formerly titled "test(s) performed" was changed to "procedure or test billed to Medicare." These patient lists also included full patient names instead of simply initials.

codes for those tests from the medical test code chart, and (3) turning to the blank Form 1500 to see how LabCorp would have filled out a claim for each individual with this information.

But still no copies of a single actual bill or claim or payment were provided. No amounts of any charges by LabCorp were identified. No actual dates of claims were alleged. Not a single completed Form 1500 was provided. No policies about billing or even second-hand information about billing practices were described, other than to state that electronic Form 1500s with certain medical test codes were used. Basically, Clausen did not add any billing information to support his allegation that actual false claims were submitted for payment, such as the amount of any charges. Instead he attached one blank claim form and alleged that certain tests would have been billed on this form with certain test and diagnostic codes filled in.

G.    LabCorp's Second Motion to Dismiss

On February 14, 2001, LabCorp filed a motion to dismiss Clausen's Second Amended Complaint. On May 16, 2001, the district court concluded that Clausen's revised pleading "suffers from the same defect as the [First] Amended Complaint" in that it did not "identif[y] a single fraudulent claim by date filed, amount or claim number that was actually submitted to the government." The

12

district court pointed out that "[i]dentifying the type of claim form used and stating that a claim was filed on the day of service or a few days thereafter is not sufficient to identify the fraud claims with sufficient particularity" to comply with Rule 9(b) in the context of this case.  Continuing to enforce the dictates of Rule 9(b), the district court added that "[t]he particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single false claim by amount."

Clausen timely appealed the dismissal of his complaints.[11]

## II.  DISCUSSION

We initially discuss the False Claims Act, then review Federal Rules 8(a) and 9(b), and turn to Clausen's complaints.

A.     The False Claims Act

The False Claims Act ("the Act") permits private persons to file a form of civil action (known as <u>qui tam</u>) against, and recover damages on behalf of the United States from, any person who:

---

[11]  We review <u>de novo</u> a district court's dismissal for failure to state a claim, applying the same standard used by the district court.  <u>United States v. Pemco Aeroplex, Inc</u>., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc).

13

> (1) knowingly[12] presents, or causes to be presented, to an officer of employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim[13] for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government

31 U.S.C. § 3729(a)(1)-(2).  As the Supreme Court has often observed, this statute "was enacted in 1863 with the principal goal of stopping the massive frauds perpetrated by large [private] contractors during the Civil War." Vt. Agency of Natural Res. v. Stevens, 529 U.S. 765, 781 (2000) (quotations omitted).  See also Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1237 n.1 (11th Cir. 1999) ("The purpose of the Act, then and now, is to encourage private individuals who are aware of fraud being perpetrated against the government to bring such information forward.") (citation omitted); United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1496-98 (11th Cir. 1991) (tracing history of Act).

----

[12] "Knowingly" means a person who "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).  Congress eliminated the requirement of proving specific intent in its 1986 amendments to the False Claims Act.  (footnote added)

[13] "Claim" means "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).  (footnote added)

14

The alleged impropriety may not be the subject of a pending Government action, or publicly disclosed information of which the accuser does not have direct and independent knowledge. Id. § 3730(e). Statutory penalties include a civil penalty of between $5,000 and $10,000 per claim and treble damages. Id. § 3729(a). If, as here, the Government does not assert its statutory right to take over the case from the plaintiff, called a relator, he can recover between 25 and 30 percent of any monies recovered from a settlement or judgment plus reasonable expenses and attorneys' fees and costs. Id. § 3730(d).

B.      Federal Rules of Civil Procedure 8(a) & 9(b)

Generally, federal civil complaints need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). And each averment should be "simple, concise, and direct," with no technical form of pleading required. Fed. R. Civ. P. 8(e). However, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

On appeal, Clausen asserts that the district court incorrectly chose to apply Rule 9(b)'s particularity requirements to actions under the False Claims Act. He asserts that this Court has never "squarely analyzed" this issue, and that Rule 9(b)

15

should not apply here because the False Claims Act creates liability for false, but not necessarily fraudulent, claims and does not require proof of specific intent.

First, this Court has addressed the application of Rule 9(b) to actions under the False Claims Act. In United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla., we agreed with the district court that a False Claims Act relator alleging a health plan administrator improperly submitted claims to Medicare needed to comply with Rule 9(b). 19 F.3d 562, 568-69 (11th Cir. 1994) (per curiam). In the context of discussing limitations on the ability of plaintiffs to bring False Claims Act suits when certain information has been publicly disclosed, we observed that Rule 9(b) prevents "[s]peculative suits against innocent actors for fraud," and explained that under Rule 9(b) allegations of fraud "must include facts as to time, place, and substance of the defendant's alleged fraud." Id. at 566-67 (citing Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)). "This requirement makes it hard for many persons to bring a qui tam suit and guards against 'guilt by association.'" Id. at 567. Turning to whether the plaintiff met the pleading requirements of Rule 9(b), we continued:

> The plaintiff's complaint must allege the details of the defendants [sic] allegedly fraudulent acts, when they occurred, and who engaged in them. Durham v. Business Management Assocs., 847 F.2d 1505 (11th Cir. 1988). [Blue Cross] argued successfully below that Cooper's complaint did not satisfy Rule 9(b). We agree. Cooper made general conclusory allegations of fraud.

16

Id. at 568.  Despite this holding, however, we remanded the case because the plaintiff was entitled to "one chance to amend the complaint and bring it into compliance with the rule."  Id. at 568-69.

Clausen believes Cooper analyzed the application of Rule 9(b) but not the threshold question of whether Rule 9(b) applies to all False Claims Act actions,[14] and thus did not create binding precedent on the latter issue.  We disagree, but, in any event, we now make clear that Rule 9(b) does apply to actions under the False Claims Act.

We believe this is required because the Act subjects entities that knowingly submit "false or fraudulent" claims to the Government for payment or approval – or knowingly make, use, or cause to be made or used a false record or statement to get such claims paid or approved – to civil liability.  31 U.S.C. § 3729(a) (using other language such as "conspires to defraud" and "intending to defraud").  In addition, the Supreme Court and this Court have consistently recognized the Act as an anti-fraud statute.  See, for example, Stevens, 529 U.S. at 781; United States v. Neifert-White Co., 390 U.S. 228, 233 (1968) (stating it "protect[s] the funds and property of the Government from fraudulent claims") (citation and quotation

---

[14]  At least three of our sister circuits have cited Cooper for the proposition that Rule 9(b) applies to False Claims Act actions.  See Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001); United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234 (3d Cir. 1998); Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476 (2d Cir. 1995).

17

omitted); Ragsdale, 193 F.3d at 1237 n.1.  And, regardless of whether the elements or descriptions of a False Claims Act action are precisely the same as common-law fraud, this Court has never required such overlap as a prerequisite for the application of Rule 9(b) to parallel statutory realms.  See Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (applying Rule 9(b) to securities fraud action); Durham, 847 F.2d at 1511 (applying Rule 9(b) to mail fraud allegation in RICO action).[15]

Thus, we agree with our sister circuits and a number of district courts in this circuit that have applied Rule 9(b) to False Claims Act actions.[16]  Thus, the district

_____

[15] We also note that the False Claims Act's command that specific intent not be proven, 31 U.S.C. § 3729(b), does not conflict with Rule 9(b), which states that intent may be averred generally.  Gold, 68 F.3d at 1477 (rejecting argument that Rule 9(b) only applies to common-law fraud and noting that "[n]o reason is apparent why [Rule 9(b)] should not apply to [False Claims Act] claims").  Furthermore, the pleading of intent is not at issue in this case.

[16] See Bly-Magee, 236 F.3d at 1018 ("The [False Claims Act] is an anti-fraud statute . . . .[C]omplaints brought under the [Act] must fulfill the requirements of Rule 9(b) – defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts."); United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999) (same); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-84 (4th Cir. 1999) (same); LaCorte, 149 F.3d at 234 (3d Cir. 1998) (same); Gold, 68 F.3d at 1476 (same); United States ex rel. Schwedt v. Planning Research Group, 59 F.3d 196 (D.C. Cir. 1995) (same); United States ex rel. Butler v. Magellan Health Servs., Inc., 101 F. Supp.2d 1365, 1369 (M.D. Fla. 2000) (same); United States ex rel. Sanders v. E. Ala. Healthcare Auth., 953 F. Supp. 1404, 1413 (M.D. Ala. 1996) (same); United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F. Supp. 1040, 1051-53 (S.D. Ga. 1990) (same).

The leading commentator in this field also agrees with these decisions.  See John T. Boese, Civil False Claims and Qui Tam Actions § 5.04 (2d ed. 2000 & Supp. 2002) ("It is widely accepted by courts that because the essence of a False Claims Act case is fraud, Rule 9(b) applies to [False Claims Act] cases.  As a result, plaintiffs in [False Claims Act] cases, whether

18

court in this case correctly held that it was "well settled" and "self-evident" that the False Claims Act is "a fraud statute" for the purposes of Rule 9(b). 198 F.R.D. at 562 (quotations and citations omitted).[17]

C.     The Dictates of Rule 9(b)

This Court has stated its views on what Rule 9(b) requires a plaintiff to plead and what purpose the rule serves. In Ziemba, for example, we observed that when fraud is alleged:

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of Rule 9(b), however, must not abrogate the concept of notice pleading. Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such

---

the government, qui tam relator, or both, must make far more detailed allegations in [False Claims Act] complaints than in most litigation. . . .The applicability of Rule 9(b) to qui tam actions is by now beyond dispute.").

We find it ironic that Clausen was himself a relator in LaCorte, in which the Third Circuit barred him from bringing a False Claims Act lawsuit against SmithKline Beecham regarding medical testing after a similar, but not identical, lawsuit had already been brought. 149 F.3d at 237. In rejecting Clausen's argument that the decision in LaCorte would lead to relators pleading "a very broad cause of action so as to preempt claims by later plaintiffs," the Third Circuit observed that Rule 9(b) "provides sufficient deterrence against overly broad allegations." (citing Cooper). Id. at 234.

[17] We note that this is "wholly consistent" with the purpose of the False Claims Act, which encourages people with knowledge of undisclosed fraud to come forward. See Bly-Magee, 236 F.3d at 1019.

statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

256 F.3d at 1202 (quotations and citations omitted).

Thus, this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards. See, for example, id. at 1210 (holding that despite existence of red flags, "series of inferences is too tenuous" to believe auditors knew of or were reckless in disregarding fraud when no "'tips,' letters, or conversations" supporting such knowledge were identified in complaint); Hendley v. Am. Nat'l Fire Ins. Co., 842 F.2d 267, 269 (11th Cir. 1988) (concluding that Rule 9(b) was not satisfied when plaintiff "steadfastly refused to offer specifics" and "never earmarked any facts as demonstrative of fraud"); Friedlander v. Nims, 755 F.2d 810, 813-14 (11th Cir. 1985) (concluding that although Rule 9(b) dismissal is "severe sanction," plaintiff's decision to ignore court's "sound and proper" recommendations about how to correct pleading deficiencies concerning scope of employee's authority warranted dismissal); Summer v. Land & Leisure, Inc., 664 F.2d 965, 970-71 (5th Cir. Unit B 1981) (affirming Rule 9(b) dismissal because "the complaint includes only conclusory allegations of fraudulent concealment").[18]

---

[18] In other cases, this Court has found challenged complaints – read together with other documents in the record – to be sufficient. In Durham, for example, the Court observed that "[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." 847 F.2d at 1512 (emphasis in original). In that case, which involved summary

Thus, in Cooper, this Court's only published opinion applying Rule 9(b) to allegations under the False Claims Act, we concluded that a plaintiff must plead "facts as to time, place, and substance of the defendant's alleged fraud," specifically "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  19 F.3d at 567-68; see also Stinson, 755 F. Supp. at 1052 (noting that when Rule 9(b) applies, "pleadings generally cannot be based on information and belief") (quoting Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir. 1988)).

D.    Clausen's Complaints

Applying Rule 9(b), the district court concluded that both Clausen's First Amended Complaint and his Second Amended Complaint suffered from a fatal flaw.  The court observed that the First Amended Complaint "does not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government" and "relies exclusively on conclusory allegations of fraudulent billing."  198 F.R.D. at 564.  Of the Second Amended Complaint, which had added the conclusory statements that LabCorp submitted for specified tests on the "date of service or within a few days

---

judgment on mail fraud used as a predicate RICO act, this Court found that affidavits stating the title, sender and date of a specific letter received in addition to references to receiving additional letters by mail "[f]rom time to time during the next several years" from other named individuals satisfied Rule 9(b) concerning the use of mails.  Id.

21

thereafter," the district court stated that the pleading "suffers from the same defect" – a lack of specific information about the actual submission of claims to the Government. We agree with these conclusions.

The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999) ("The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.' Therefore, a central question in False Claims Act cases is whether the defendant ever presented a 'false or fraudulent claim' to the government.") (quoting United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995)); Russell, 193 F.3d at 308 ("Because such statements or claims are among the circumstances constituting fraud in a False Claims Act suit, these must be pled with particularity under Rule 9(b)").[19] Without the presentment of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False

---

[19] See, for example, United States v. Basin Elec. Power Coop., 248 F.3d 781, 803 (8th Cir. 2001) (holding a prima facie case under the False Claims Act requires that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent).

22

Claims Act. Harrison, 176 F.3d at 785 ("[T]he False Claims Act at least requires the presence of a claim – a call upon the government fisc – for liability to attach."). The submission of a claim is thus not, as Clausen argued, a "ministerial act," but the sine qua non of a False Claims Act violation.

As such, Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government. As in Cooper, and as with every other facet of a necessary False Claims Act allegation, if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government. See, for example, Butler, 101 F. Supp.2d at 1369 (applying Rule 9(b) and dismissing amended complaint under Act due in part to plaintiff "plead[ing] a fraudulent scheme of conduct which may well be prohibited by law" but not pleading "any specific occurrences of a false claim").

In reviewing Clausen's complaints and taking their allegations as true, we agree with the district court that Clausen's failure to allege with any specificity if – or when – any actual improper claims were submitted to the Government is indeed

23

fatal to his complaints under the particular circumstances of this case.[20]  In none of his descriptions of alleged schemes by LabCorp to increase its testing and testing revenues – which are accompanied by dozens of pages of exhibits – does he provide any factual basis for his conclusory statement tacked on to each allegation that bills were submitted to the Government as a result of these schemes, or, as the Second Amended Complaint adds, that they were submitted "on the date of service or within a few days thereafter."  At most, Clausen's complaints raise questions about LabCorp's internal testing policies.  But nowhere in the blur of facts and documents assembled by Clausen regarding six alleged testing schemes can one find any allegation, stated with particularity, of a false claim actually being submitted to the Government.

Thus, Clausen's allegations have fallen short.  And at no stage of this case did they reach their mark.  For example, in Clausen's First Amended Complaint, he

---

[20]  In light of this conclusion, we need not address whether Clausen's allegations about the schemes themselves were adequately pleaded.  (We note that although the district court found "there is no question Plaintiff's [First Amended C]omplaint is detailed regarding the process allegedly undertaken by LabCorp and its employees," LabCorp argues on appeal that the schemes are only pleaded in general terms and are insufficient as well.)

In addition, because of our holding, it is unnecessary to speculate whether Clausen adequately alleged who submitted any false claims.  See, for example, United States ex rel. Butler v. Magellan Health Servs., Inc., 74 F. Supp.2d 1201, 1216-17 (M.D. Fla. 1999) (noting that "complaint fails to refer to specific employees who may have been involved in submitting false claims") (discussing United States ex rel. Robinson v. Northrop, 149 F.R.D. 142 (N.D. Ill. 1983)).

described the various schemes LabCorp allegedly implemented to generate unneeded or duplicative medical tests on unsuspecting LTCF patients. He even provided three LTCFs' patient lists for a few years and a handful of patients' lab results and standing orders to illustrate the tests LabCorp had performed. This set the stage for the consummation of this alleged nefarious plot to recover unjustified amounts of taxpayer money. But, as to the plot's execution, Clausen merely offers conclusory statements, and does not adequately allege when – or even if – the schemes were brought to fruition. He merely alleged that "these practices resulted in the submission of false claims for payment to the United States." No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described, other than to state that electronic HCFA Form 1500s with medical test codes were used. No copy of a single bill or payment was provided.[21]

---

[21] The dissent suggests we ask for all of this information, and thus "ask[] for the impossible." To the contrary, this discussion merely lists some of the types of information that might have helped Clausen state an essential element of his claim with particularity but does not mandate all of this information for any of the alleged claims. Although Clausen has provided none of these items of information here, some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

We cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity or ignoring that the "true essence of the fraud" of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme. Even the example of patient H.L. cited by the dissent, while providing details of medical treatment, offers no factual basis for the conclusory allegation that LabCorp submitted actual improper claims for payment to the Government on the "date of service or within a few days thereafter."

The district court thus stated that LabCorp "could perform as many tests as it pleased as long as it only billed for the ones allowable under the applicable governmental program," and properly dismissed Clausen's First Amended Complaint because he "failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes identified." 198 F.R.D. at 563-64.

Unfortunately for Clausen, despite the district court's admonishments to include more information about claims actually submitted – including identification of actual, and not merely possible or likely, claims submitted, items on particular claim forms and the dates on which they were submitted to the Government – to attempt to comply with Rule 9(b), his Second Amended Complaint did not add much helpful information. To Clausen's credit, he preserved all of his allegations about the various schemes engaged in by LabCorp, attached a blank Form 1500[22] and described what medical test codes would be filled in on a particular section of the form based on the tests previously alleged to have been performed according to his three Georgia LTCF patient lists. But he failed to provide any additional information linking the testing schemes to the submission of any actual claims or any actual charges. And he simply, and without any additional explanation or support, revised his allegation to include the

_____

[22] LabCorp attempts to diminish the significance of the form provided by Clausen by noting that the HCFA Form 1500 is "used by every Medicare and Medicaid provider to process every claim submitted to the government."

26

conclusory allegation that LabCorp submitted bills to the Government "on the date of service or within a few days thereafter." If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion. But this is what Clausen offered in his Second Amended Complaint, asking that his conclusory allegations about the submission of claims by LabCorp be accepted without any factual basis.[23]

When Rule 9(b)\ applies to a complaint, a plaintiff is not expected to actually prove his allegations, and we defer to the properly pleaded allegations of the complaint. But we cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.[24]

---

[23] The dissent criticizes our conclusion that a False Claims Act plaintiff must allege some factual basis for the allegation that an actual claim in some actual amount was submitted. This is not "ask[ing] for the obvious," as characterized by the dissent. It is only obliging a relator to plead and support every essential element of his complaint with particularity under Rule 9(b) and our precedents. See Ziemba, 256 F.3d at 1202; Cooper, 19 F.3d at 567-68.

Contrary to the dissent's suggestion, we cannot (1) presume what LabCorp's billing policies were and assume LabCorp actually billed the Government in whole or in part for all tests it "took the trouble to order," (2) speculate that Clausen's late-in-the-game addition of vague and meaningless ranges for dates of submission of claims must "indicate he had some familiarity" with LabCorp's procedures, and (3) take comfort in the fact that the relevant false claims were not alleged to have been submitted "any differently" from legitimate payments for which we also have no specific information. We must leave the burden of pleading the particular facts behind the complaint's allegations to the plaintiff in this case.

[24] Clausen argues that his allegations give LabCorp enough information to formulate a defense to the charges, which is one of the purposes of Rule 9(b). See Durham, 847 F.2d at 1511. However, we believe Clausen's failure to plead all the elements of his claim with specificity violates an equally strong purpose of Rule 9(b) – protecting defendants from frivolous suits, or "spurious charges of immoral and fraudulent behavior." Id. (quoting Seville Indus.

We are not unsympathetic to the situation in which Clausen finds himself.

Most relators in qui tam actions are insiders. As a corporate outsider, he may have

had to work hard to learn the details of the alleged schemes entered into by

LabCorp through years of making contacts in and learning about the industry while

not being privy to LabCorp's policy manuals, files and computer systems. But,

while an insider might have an easier time obtaining information about billing

practices and meeting the pleading requirements under the False Claims Act,

neither the Federal Rules nor the Act offer any special leniency under these

particular circumstances to justify Clausen failing to allege with the required

specificity the circumstances of the fraudulent conduct he asserts in his action.[25]

_____

Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3ᵈ Cir. 1984)). When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements. See Stinson, 755 F. Supp. at 1053 (referring to these as "other important purposes" of Rule 9(b)). This is especially so in cases involving the False Claims Act, which provides a windfall for the first person to file and permits recovery on behalf of the real victim, the Government.

We add that our holding that Rule 9(b) has not been satisfied applies equally to Clausen's claims styled as testing irregularities (the self-referral, duplicative test, screening and unbundling schemes) and billing irregularities (the blood draw and trip charge schemes) because, as stated previously, a false claim must be presented for any liability to attach under the False Claims Act. And Clausen provides no support for his allegations that any claims were actually submitted.

[25] We also reject Clausen's argument that we should apply a more lenient pleading standard because evidence of fraud was uniquely held by the defendant. Clausen is not without avenues for obtaining information. See United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5ᵗʰ Cir. 1999) (declining to relax Rule 9(b)'s pleading standard because "documents containing the requisite information were possessed by other entities, such as the Healthcare Financing Administration"). Even if we were not to find that Clausen might obtain the necessary billing information from the Government, Clausen's conclusory statements are insufficient to justify relaxation. See United States ex rel. Thompson v. Columbia/HCA

Because we find that Clausen failed to meet the minimum pleading requirements for the actual presentment of any false claims even as to the specific examples of identified patients and the three Georgia LTCFs and for which Clausen provided patient identities, dates of testing and testing procedures, it is beyond question that his allegations with even less specifically pleaded information must also fail. Thus, Clausen's pleadings about similar false claims at 37 other named Georgia LTCFs (for which small amounts of information or no information were provided), 60 unnamed Georgia LTCFs, three named regional or national LTCF chains and an unspecified number of other unnamed facilities

---

Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997) (requiring factual basis for belief and noting that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations" and that "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief") (citations omitted); Stinson, 755 F. Supp. at 1052 (observing that even when standard is relaxed, "pleaders must allege that the necessary information lies within the defendant's control, and then allegations must be accompanied by a statement of facts upon which the allegations are based") (quotations and citation omitted).

Clausen also argues that Rule 9(b) should be relaxed because the fraud was complex. This exception may apply in appropriate circumstances to aid those alleging prolonged multi-act schemes. However, even under this exception, Clausen would have to allege at least some examples of actual false claims to lay a complete foundation for the rest of his allegations, which he has failed to do. See for example, Thompson, 125 F.3d at 903 (affirming dismissal of allegations after recognizing that while pleading on information and belief may be sufficient under this exception, it does not constitute a "license to base claims of fraud on speculation and conclusory allegations" and that "the complaint must set forth a factual basis for such belief") (citation omitted). Compare Durham, 847 F.2d at 1512 n.12 (approving of allegation that mails were used for a pattern of fraudulent activity based on an affidavit identifying use of the mails and describing the sender, title, recipient and precise date and method of sending) with Butler, 101 F. Supp.2d at 1369 (noting that while the pleaded allegations are "illustrative of the type of fraud Plaintiff alleges," action must be dismissed because it did not "address any false claim or any document bearing a false claim on the part of the [eight health care facility] Defendants").

nationwide between the late 1980s and 1998 – without any similar support –

cannot be maintained under Rule 9(b).

## III.  CONCLUSION

For  reasons stated herein, we AFFIRM the district court's dismissal of

Clausen's First Amended Complaint and Second Amended Complaint for failure to

comply with Federal Rule of Civil Procedure 9(b).

**AFFIRMED.**

BARKETT, J., dissenting:

Clausen's complaint is not a model of clarity, but in my view it adequately complies with the requirements of Rule 9(b). Although not explicitly drawing a distinction, the majority characterizes the defect of Clausen's complaint in two ways: first, as a failure to allege the specific dates or amounts of false claims submitted to the government; and second, as a failure to provide a "factual basis" for the claim that bills were submitted to the government "on or within a few days" of the dates on which LabCorp allegedly performed unnecessary, duplicative, or otherwise improper tests. I will discuss these concerns separately, since they implicate different legal issues.

1. **Dates and Amounts of False Claims**

Rule 9(b) states that "the circumstances constituting fraud or mistake shall be stated with particularity." By itself, of course, that language does not tell us whether the failure to specify the amount of the false claim, or to indicate the precise date on which it was submitted rather than a range of a few days, constitutes a lack of particularity that is fatal to the complaint. It is therefore necessary to look to the purposes of Rule 9(b), which the majority identifies, but, apart from one footnote, does not discuss: "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of

31

immoral and fraudulent behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quotations and citations omitted). It is also worth recalling that the district court deemed Clausen's complaint to have complied with the particularity requirements of Rule 9(b) at least insofar as it described the various arrangements or "schemes" by which LabCorp would allegedly perform medically unnecessary tests. Moreover, the complaint identified specific patients and specific dates on which those tests were performed. Thus, the question is whether a complaint that adequately alleges the schemes by which medically unnecessary tests are performed, and identifies the specific dates and patients on which those tests were performed, nonetheless frustrates the purposes of Rule 9(b) if it does not identify the specific amount of each claim and states that each claim was submitted to the government "on or within a few days" of the date on which the test was performed.

The majority appears to accept that the first purpose of Rule 9(b)—alerting defendants to the precise misconduct with which they are charged—would not be frustrated were Clausen's complaint permitted to survive. Obviously, the essence of the fraud in this case lies in the schemes to perform unnecessary tests, rather than in the claims for payment. Clausen does not allege that LabCorp billed for the improper tests any differently than it bills for medically appropriate tests; the only

issue is whether the underlying tests were medically necessary.[1]  Thus, the schemes

by which LabCorp allegedly performed medically unnecessary tests constitute the

heart of the misconduct that LabCorp must defend against, and the district court

did not question the adequacy of the particularity with which Clausen described

those schemes.

Of course, if there was no claim for payment, then there was no fraud, but

Clausen's complaint does allege that LabCorp billed for the tests performed as a

result of these schemes.[2]  LabCorp would be free to answer Clausen's complaint by

showing that it never submitted bills for any of these tests.  But the availability of

this defense—however unlikely it is that LabCorp would resort to it—has no

bearing on whether LabCorp has been sufficiently alerted to the misconduct with

which it has been charged.  Clausen has identified the specific tests he alleges to be

improper and the reasons why they are improper, along with the patients and dates

on which they were performed.  The amount of, and precise date on which, bills for

---

[1]It would be different if Clausen alleged, for example, that LabCorp had billed for tests that it never performed.  In that case the specific dates on which claims for payment were submitted to the government might well be necessary to satisfy the requirements of Rule 9(b).  But that is not this case.

[2]The majority writes that "nowhere in the blur of facts and documents assembled by Clausen regarding six alleged testing schemes can one find any allegation, stated with particularity, of a false claim actually being submitted to the Government."  That statement is simply not borne out by a reading of the complaint.  For example, in paragraph 60 of his complaint, Clausen alleges that LabCorp performed an unnecessary Glucose test on patient H.L. on April 15, 1997, and that a claim for the test was submitted "on April 15 or within a few days thereafter" via electronic form HCFA 1500, with CPT code 82947.

these tests were submitted to the government is not necessary to alert LabCorp to the nature of its alleged misconduct, and thus LabCorp cannot colorably contend that it is unable to discern from Clausen's complaint the misconduct in which it has allegedly engaged.

So let us consider the second purpose: protecting defendants against spurious charges of immoral and fraudulent behavior. Put another way, the rule protects defendants from frivolous lawsuits and from undeserved harm to their goodwill and reputation. See, e.g., Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). The particularity requirement accomplishes this purpose by requiring would-be plaintiffs to have a reasonable (and reasonably precise) basis for their allegations prior to discovery. But for the same reason that Clausen's allegations adequately alert LabCorp to the misconduct it must defend against, his complaint adequately satisfies the second purpose of Rule 9(b): it alleges with particularity the facts constituting the essence of the fraudulent conduct. It lays out the circumstances of the fraud that would not be a matter of common knowledge or common sense: namely, the schemes by which LabCorp allegedly performed medically unnecessary tests.

As the majority notes, "[a]s a corporate outsider, [Clausen] may have had to work hard to learn the details of the alleged schemes entered into by LabCorp through years of making contacts in and learning about the industry while not

34

being privy to LabCorp's policy manuals, files and computer systems." As the majority thus appears to recognize, the requirement that a plaintiff allege with particularity the testing schemes—along with specific patients and dates on which allegedly improper tests were performed—will do much to protect defendants against spurious charges or frivolous lawsuits. While a requirement that the plaintiff further identify the precise dates and amounts of claims for payment may result in the dismissal of more lawsuits, there is no reason to think that the majority of the additional lawsuits dismissed will be frivolous ones. When an outsider like Clausen has no pre-discovery means of access to the dates on which the defendant submitted its claims for payment, the lack of that information tells us nothing about the likelihood that the lawsuit is frivolous. By alleging with particularity the schemes by which medically unnecessary tests were performed and identifying specific patients and dates on which those tests were performed, Clausen has, in my view, overcome the bar erected by Rule 9(b) to spurious charges or frivolous lawsuits.

2.     **The Factual Basis for Clausen's Allegations as to Claims for Payment**

The majority suggests that Clausen's allegations regarding LabCorp's submission of claims for payment should be discounted or disregarded because they are "conclusory." Clausen, the majority complains, cites no facts in support of his allegation that bills were submitted for the tests performed. However, the

35

majority itself identifies a potential problem with its argument: "When Rule 9(b) applies to a complaint, a plaintiff is not expected to actually prove his allegations and we defer to the properly pleaded allegations of the complaint." "But," the majority continues, "we cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit."

The "mere conjecture" to which the majority alludes, of course, is the allegation that LabCorp actually billed for the tests it performed. Taking as true Clausen's allegations regarding LabCorp's schemes—as we must on a motion to dismiss—his allegations regarding billing would appear to be mere conjecture only if we were willing to attribute to LabCorp a highly unusual business model that consisted in arranging for the systematic administration of medically unnecessary tests for which it never intended to be paid. I see nothing alarmingly conjectural about Clausen's allegation that LabCorp billed for the allegedly unnecessary tests it methodically took the trouble to order.

The majority wants Clausen to provide "copies of bills or payments." But that is to say the majority asks for proof, and proof is not required at the pleading stage. The majority also wants identification of the amounts of charges and the actual dates of claim submission. But the majority does not suggest that Clausen had any pre-discovery means of obtaining that information, so it asks for the

36

impossible.  Finally, the majority wants "policies about billing" or "second-hand information about billing practices."  Perhaps Clausen could have found some information indicating that LabCorp—whose business is to perform medical tests for payment—had a policy of billing for the tests it performed.  But here, the majority simply asks for the obvious.[3]

It may be that the majority reaches the conclusion it does because it suspects that Clausen's lawsuit is without merit.  I do not know whether the suit has merit or not, but in any event, it is not relevant to the question before us.  A court should not rely on its estimation of the merits of the underlying suit when deciding whether a complaint has complied with the requirements of Rule 9(b).  My concern with the law the Court makes today is that it is undiscriminating, as likely to result in the dismissal of meritorious lawsuits as it is to protect defendants from unwarranted litigation.

---

[3]Moreover, does not Clausen's allegation that bills were submitted "on or within a few days" of the tests performed indicate that he had some familiarity with LabCorp's billing practices?