[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 3, 2008
THOMAS K. KAHN
CLERK

No. 07-13720
Non-Argument Calendar
_____

D. C. Docket No. 04-21431-CV-AJ

EVE BARYS, on behalf of the United States
of America and the State of Florida,
DWAYNE OSTROM, on behalf of the United States
of America and the State of Florida,

Plaintiffs-Appellants,

versus

VITAS HEALTHCARE CORPORATION,
VITAS HOSPICE SERVICES, LLC,
VITAS HEALTHCARE CORPORATION OF FLORIDA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 3, 2008)**

Before ANDERSON, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiff-Appellants Eve Barys and Dwayne Ostrom (collectively "Relators") appeal the district court's dismissal of their claims against defendant-appellees, Vitas Healthcare Corporation, Vitas Hospice Services, LLC, and Vitas Healthcare Corporation of Florida (collectively "Vitas"), for violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., and the Florida False Claims Act, Fla. Stat. §§ 68.081-68.092.[1]  On appeal, Relators argue that the district court erred in dismissing their amended complaint with prejudice for failing to plead with sufficient particularity under Federal Rule of Civil Procedure 9(b).  In the alternative, Relators contend that the pleading requirements of Rule 9(b) should be relaxed under the circumstances of this case because the facts relating to fraud are uniquely within the defendant's knowledge.

We review a dismissal for failure to state a claim de novo, applying the same standard as the district court.  Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1307 n.11 (11th Cir. 2002).

## I.  BACKGROUND

---

[1] The district court determined that the Florida False Claims Act mirrored the FCA and did not need to be addressed separately.  Relators do not challenge this finding or advance separate arguments in favor of their Florida law claims.  Thus, we also decline to separately address these claims.

2

Vitas is the largest provider of hospice services in the United States. The Medicare Hospice Benefit ("MHB") pays a predetermined fee for each day an eligible patient receives hospice care. To be eligible, a physician must certify that the patient is "terminally ill." 42 U.S.C. § 1395f(a)(7). Terminal illness is established when "the individual has a medical prognosis that his or her life expectancy is 6 months or less if the illness runs its normal course." 42 C.F.R. § 418.3. After a patient's initial certification, MHB provides for two initial ninety-day benefit periods followed by an unlimited number of sixty-day benefit periods. 42 U.S.C. § 1395d(a)(4). At the end of each period, the patient can be re-certified only if at that time they have less than six months to live if the illness runs its normal course. Id. § 1395f(a)(7). However, there is no limit on the number of times a patient can be re-certified.

## II. DISCUSSION

We first discuss whether Relators pled with sufficient particularity under Rule 9(b). We then turn to whether the requirements of Rule 9(b) should be relaxed under the circumstances of this case.

### A. Pleading with Particularity under Rule 9(b)

Having carefully reviewed the record and the briefs of the parties, we discern no reversible error regarding the district court's determination that the

amended complaint failed to properly plead a fraud claim. In order to state a claim under the FCA, a plaintiff must plead three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States, ex rel. Walker v. R.&F. Prop. of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005); see also 31 U.S.C. § 3729(a). Rule 9(b)'s heightened requirements for pleading fraud apply to an FCA claim. See Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1309-10 (11th Cir. 2002). Specifically, Relators must plead "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." Id. at 1310. In addition, the complaint must contain "some indicia of reliability. . . to support the allegation of an actual false claim for payment being made to the Government." Id. at 1311. The district court found that Relators presented nothing but bald allegations that the MHB claims Vitas submitted to the government were actually fraudulent. As a result, the court determined that the amended complaint lacked the "indicia of reliability" necessary to plead a fraud claim under Rule 9(b). Exhibit A to the amended complaint identifies allegedly fraudulent claims on behalf of particular patients. Relators claim that these patients did not qualify for the hospice benefit because either they did not have a life expectancy of six

4

months or less at the time of the applicable claim or the re-certification note and supporting documentation did not support such a prognosis. The district court found that Relators failed to allege any factual basis for this conclusion. On appeal, Relators argue that the amended complaint contains several factual allegations that provide sufficient indicia of reliability to support a claim of fraud under Rule 9(b).

First, Relators claim that they had personal knowledge of Vitas' submission of the false claims identified in Exhibit A. Specifically, Relators alleged that Ostrom, in his positions of employment with Vitas, had first-hand knowledge of Vitas' re-certification practices and internal billing practices, as well as full access to Vitas' information management system. Similarly, Relators allege that Barys, during her employment with Vitas, had first-hand knowledge of re-certification practices, as well as limited access to Vitas' information databases. Relators rely upon Hill v. Morehouse Med. Assoc., Inc., where the plaintiff alleged that she personally observed billers, coders and physicians alter diagnosis codes in order to receive higher Medicare reimbursements. No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003). The plaintiff was able identify the types of codes which were allegedly changed, the frequency with which she observed such alterations, and the names of some of the individuals responsible for making these

5

changes. Id. at *1, *4-5 & n.4. These assertions, in addition to the fact that the plaintiff worked in the very department where the fraudulent billing allegedly occurred, had first-hand knowledge of internal billing practices, and had access to the company's computer systems, provided sufficient indicia of reliability to satisfy Rule 9(b). Id. at *4-5. By contrast, Relators have not alleged any fact to support an inference that the MHB claims were fraudulent. Thus, an assertion of personal knowledge cannot provide their conclusory allegations with the indicia of reliability necessary to support a claim for fraud under Rule 9(b). See, e.g., Corsello v. Lincare, Inc., 428 F.3d 1008, 1013-14 (11th Cir. 2005) ("Although Corsello worked in sales, his allegations . . . lacked the "indicia of reliability" required by Clausen because they failed to provide an underlying basis for Corsello's assertions.").

On appeal, Relators assert that (1) many patients had lengthy stays at the hospice, (2) Vitas increased net patient revenue by more than two million dollars from 2001 to 2003 while aggressively discouraging the decertification of patients who were no longer terminally ill, (3) Vitas implemented a system to promote the re-certification of patients for MHB absent a physician's proper and conscientious clinical judgment concerning patients' prognoses, (4) Vitas promoted willful blindness to material information necessary to determine whether a patient

6

remained eligible for MHB, and (5) the medical director would generally instruct that patients not be discharged after a certifying physician thought that the patient was inappropriate for hospice care. As the district court properly noted, such conclusory statements do not assert a single fact to support Relators alleged knowledge of fraudulent re-certifications. Furthermore, these statements certainly do not explain why Relators believe that the particular patients identified in Exhibit A to the amended complaint were fraudulently re-certified.

More specifically, Relators allege that two paragraphs in a Vitas training guide demonstrate that physicians were directed to re-certify patients who no longer had a prognosis of less than six months to live. These paragraphs are set forth below.

> Recognize that patients who have good symptom control may feel better and seem to improve. If the underlying terminal illness still exists, however, the prognosis should be the same, and the patient should be recertified.

> Patient and family wishes need to be considered. If the patient's terminal illness may not appear to be progressing due to good symptom management, and the patient and family still desire a palliative approach to care, then the patient should be recertified.

These directives do not support an allegation that Vitas instructed physicians to re-certify patients who had more than six months to live. Rather, they instruct physicians to be cognizant of the fact that good symptom control does not

necessarily suggest that the underlying prognosis has changed.

In addition, Relators point to a Vitas document requiring senior medical personnel to review a patient's case if an initial assessment cannot confirm that the patient has less than six months to live at the time of re-certification. Relators contend that this policy allows patients who indisputably have more than six months to live to remain in hospice care while an unnecessary review is pending. However, at the time a patient is first admitted to hospice care they are given a prognosis of less than six months to live. Relators do not assert that these initial prognoses are fraudulent. Thus, requiring an additional layer of review before a patient's prognosis is changed and the patient is discharged does not support an inference that patients are being fraudulently re-certified. The same Vitas document instructs the certifying physician to discharge the patient from MHB if the review cannot confirm that the patient has less than six month to live.

Relators also argue that Vitas fraudulently failed to decertify any patients in its Miami-Dade program because it stopped holding discharge meetings. Relators claim that patients can only be discharged for an extended prognosis during a discharge meeting. However, later in the amended complaint Relators allege only that the Miami-Dade program failed to discharge any patients for receiving an extended prognosis during the months of March, June and October of 2003. The

8

fact that no patients were discharged for receiving an extended prognosis during three separate months does not fairly support an inference that patients were being fraudulently re-certified.

Next, Relators assert that Vitas paid cash bonuses to some of its employees, including the medical director, to keep unqualified patients in the system. The amended complaint alleges that the structure of Vitas' bonus system made it profitable to keep unqualified patients in the system. The compensation system provided cash bonuses to administrators who maintained high patient populations. However, without allegations of instances in which these administrators fraudulently re-certified patients under MHB, this assertion is insufficient to support an inference of fraud.

Finally, Relators quote a statement by vice-president of hospice operations Ian Viente: "Vitas doesn't want Medicare coming into the program again like they did in 1997 when they discharged one hundred patients." This statement does not support an inference of fraud. Relators do not allege facts suggesting that the one hundred patients discharged by Medicare in 1997 were fraudulently re-certified. At best, it suggests that these patients were improperly re-certified.

Accordingly, considering these allegations individually and as a whole, we conclude that the district court did not err in dismissing the amended complaint for

failure to satisfy the requirements of Rule 9(b).

B. <u>Relaxing the Requirements of Rule 9(b)</u>

We also find that the district court did not err in failing to relax the pleading requirements of Rule 9(b). Relators assert that they did not have access to the physician's notes and medical records that would more clearly demonstrate the improvements in prognosis that necessitated de-certifying patients for MHB. Relators argue that the pleading requirements of Rule 9(b) may be relaxed when the facts relating to fraud are "peculiarly within the perpetrator's knowledge." <u>United States ex rel. Doe v. Dow Chem. Co.</u>, 343 F.3d 325, 330 (5th Cir. 2003). Even accepting this as true, Appellant's conclusory statements are insufficient to justify relaxation. <u>See</u> <u>Clausen v. Lab. Corp. of Am.</u>, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002) (noting that a more lenient pleading standard cannot be used to base claims of fraud on conclusory allegations). Furthermore, it does not appear that the facts relating to fraud are uniquely held by Vitas. Relators identified specific claims on behalf of specific patients. They assert that they had knowledge of facts unique to each patient's case enabling them to identify these claims as fraudulent. Relators needed only to allege the factual basis upon which they identified these claims as fraudulent. In both the amended complaint and their briefs to this Court, Relators failed to do so. Thus, the district court did not err in

failing to apply a more lenient pleading standard.

Accordingly, we affirm.

AFFIRMED.[2]

---

[2] Appellants' request for oral argument is DENIED.