Leigh Martin May, United States District Judge
This matter is before the Court on Defendants' Motion to Dismiss and to Strike the Intervenor's Complaint [71]. After due consideration, the Court enters the following Order:
I. BACKGROUND
In October 2013, Relator Laura Dildine brought this qui tam action against Dr. Aarti Pandya on behalf of the United States, alleging violations of the federal False Claims Act ("FCA"), 31 U.S.C. § 3729. See Dkt. No. [1]. The United States elected to intervene in June 2018 and filed its Intervenor Complaint ("Complaint") on October 18, 2018. See Dkt. No. [60]. The Government alleges that Defendants knowingly submitted false claims to Medicare and knowingly made or used false records or statements to get false or fraudulent Medicare claims paid by the United States between January 2011 and December 2016 and that such practices resulted in the payment for services that were not medically necessary, never rendered, or not rendered as represented. Id. ¶ 1.
Defendant Dr. Aarti Pandya is an ophthalmologist and the sole owner of the Pandya Practice Group, a private ophthalmology practice in Conyers, Georgia. Id. Relator Laura Dildine formerly worked as the office manager of the Pandya Practice Group from October 2012 to February 2014. Id. ¶ 8. Dr. Pandya has worked at her current ophthalmology practice since completing her residency in 1999, and she became the sole owner of the practice in 2011 when she acquired it from the preceding owner upon his retirement. Id. ¶ 36. The Complaint alleges that upon taking over the practice, "Medicare billings skyrocketed" despite no change in the patient population. Id. ¶¶ 38-39. Specifically, the Complaint references the average number of services billed annually per Medicare beneficiary and claims that the number more than doubled in the first two years of Dr. Pandya's practice ownership. Id. ¶ 40. The Government alleges a search warrant executed in 2014 curtailed the alleged fraudulent Medicare billing practice during that calendar year; however, the heightened Medicare billing resumed the following year in 2015. Id. The Government attributes the increased Medicare billing practice to "multiple schemes, all of which resulted in the submission of false claims ... and, in many cases, placed her patients at risk of serious harm." Id. ¶ 41.
The Complaint divides the alleged false claims into three categories: surgical and laser procedures, diagnostic tests, and office visits. Id. at 14, 32, 61. Each section contains detailed allegations, including specific patient encounters, that highlight the alleged fraudulent practices. Id. at 17, 40, 70.
For example, regarding the surgical and laser procedures, Section One alleges that *1218 Dr. Pandya performed cataract surgeries on patients who presented with little or no vision complaints and whose visual acuity would not warrant surgery. Id. ¶ 51. And the Medicare billing data indicates that Dr. Pandya engaged in a practice called "upcoding," in which a provider would bill under a complex surgery procedure code, rather than a routine surgery procedure code, to obtain a higher reimbursement rate. Id. ¶ 72.
Section Two alleges that Dr. Pandya's billing data indicates the use of fraudulent diagnostic practices to increase reimbursement rates. Id. ¶ 110. In 2013, the percentage of Dr. Pandya's Medicare patients diagnosed with a glaucoma-related diagnosis exceeded the national average more than ten times. Id.
Section Three alleges a similar "upcoding" practice for regular office visits-essentially that Dr. Pandya submitted claims with Level 4 and Level 5 procedures codes, codes reserved for more complex office visits, when in fact the visits were non-complex and often limited to five to ten-minute encounters. Id. ¶¶ 177, 194.
Defendants now move to partially dismiss all claims based on cataract procedures and glaucoma tests. See Dkt. No. [71] at 3. Defendants contend the Government has both failed to sufficiently allege the falsity and scienter elements required to state a claim under the FCA and failed to demonstrate any facts that would support recovery under the common law doctrines of payment by mistake or unjust enrichment. Id. at 2-3. Defendants also move to strike Paragraphs 230-235 of the Complaint as immaterial, impertinent, and irrelevant pursuant to Federal Rule of Civil Procedure 12(f). See Dkt. No. [71] at 26; Fed. R. Civ. P. 12(f).
II. LEGAL STANDARD
"[A] complaint alleging violations of the FCA must satisfy two pleading requirements." United States ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1222 (11th Cir. 2012). First, it must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. (quoting Fed. R. Civ. P. 8(a)(2) ). And second, it "must comply with Rule 9(b)'s heightened pleading standard, which requires a party to 'state with particularity the circumstances constituting fraud or mistake." Id. (quoting Fed. R. Civ. P. 9(b) ); see United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1308 (11th Cir. 2002) (holding that Rule 9(b) applies to FCA cases); see also Fed. R. Civ. P. 9(b) (requiring that the complaint "state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). The Court accepts the facts in the Government's complaint as true, but "if the facts alleged do not satisfy the requirements of the Federal Rules of Civil Procedure, a claim has not been stated." Clausen, 290 F.3d at 1303 n.2.
The Eleventh Circuit has held that Rule 9(b) may be relaxed in FCA cases where the relator has personal knowledge of the fraudulent conduct or personally participated in it. See Matheny, 671 F.3d at 1230 ("[W]e are more tolerant toward complaints that leave out some particularities of the submissions of a false claim if the complaint also alleges personal knowledge or participation in the fraudulent conduct."); United States ex rel. Walker v. R & F Props. of Lake Cty., Inc., 433 F.3d 1349, 1360 (11th Cir. 2005) (holding that a relator who discussed with a fellow employee the fraudulent billing practices and participation in that process was sufficient to satisfy Rule 9(b) ); see also Clausen, 290 F.3d at 1314 n.25 (recognizing that *1219 Rule 9(b)'s pleading standard may be "relaxed" "in appropriate circumstances to aid those alleging prolonged multi-act schemes").
Finally, pursuant to Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[i]t is axiomatic that motions to strike are not favored and are, therefore, infrequently granted." United States v. S. Motor Carriers Rate Conference, 439 F. Supp. 29, 39 (N.D. Ga. 1977). "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." Daugherty v. Firestone Tire & Rubber Co., 85 F.R.D. 693, 695 (N.D. Ga. 1980) (quoting 2A James W. Moore et al., Moore's Federal Practice ¶ 12.21(2) (1979)).
III. DISCUSSION
A. Partial Motion to Dismiss False Claims Act Count
Defendants assert that, regarding the cataract procedures and glaucoma diagnoses claims, the Government has failed to sufficiently allege both the falsity and scienter elements required to state a claim under 31 U.S.C. § 3729(a)(1)(A). See Dkt. No. [71] at 6. Under the FCA, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable to the United States. United States ex rel. Phalp v. Lincare Holdings, 857 F.3d 1148, 1154-55 (11th Cir. 2017) (citing 31 U.S.C. § 3729(a)(1)(A)-(B) ). To establish a cause of action under § 3729(a)(1)(A), the Government must prove three elements: "(1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false." Id. at 1154. To establish a cause of action under § 3729(a)(1)(B), the Government must show that: "(1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." Id.
1. Falsity Element
Defendants claim the Government cannot prove they knew the cataract procedures and glaucoma diagnoses and tests were false, as the question is ultimately a difference of medical opinion. See Dkt. No. [71] at 8. Principally, Defendants rely on Unites States v. AseraCare, Inc. as persuasive authority in support of their contention. 176 F. Supp. 3d 1282 (N.D. Ala. 2016) ; see Dkt. No. [71] at 9-11. In AseraCare, the relator claimed the defendant hospice care provider improperly certified patients as hospice care eligible, when their medical prognoses did not warrant such certification. AseraCare, 176 F. Supp. 3d at 1283. After granting a new trial, the district court in AseraCare sua sponte considered summary judgment and determined a medical expert's hospice care eligibility testimony could not serve as the sole testimony in support of the plaintiff's claim that the patients were ineligible when the defense presented conflicting expert witness testimony. Id. The district court held that "contradiction based on clinical judgment or opinion alone cannot constitute falsity under the FCA as a matter of law." Id. at 1286. Relying on this holding in that limited context, Defendants argue medical opinions can never be false. See Dkt. No. [71] at 9.
*1220 First, the procedural posture of AseraCare renders the holding inapplicable to the present case. In AseraCare, the court sua sponte considered summary judgment and ordered the Government to produce "admissible, objective evidence ..., other than [the expert]'s testimony, that would prove falsity and show that the Government presented more evidence than merely a difference of opinion to which reasonable minds could differ." AseraCare, 176 F. Supp. 3d at 1284. After the Government failed to produce objective evidence per the court's order, the court entered summary judgment in favor of the defendants. Id. Here, at the pleading stage, the Court is required to accept as true the allegations of the Complaint, which allege objective falsity.
Second, the present case is distinguishable from AseraCare on the facts. The conflicting hospice care eligibility expert testimony involves a subjective difference of medical opinion. AseraCare, 176 F. Supp. 3d at 1284. However, the Complaint here alleges objective falsity-for example, that Dr. Pandya falsely diagnosed cataracts and then performed unnecessary cataract surgeries on those patients. See Dkt. No. [60] ¶ 51. AseraCare's limited holding regarding a subjective difference of medical opinion simply does not apply to an objectively false diagnosis. Thus, even under the holding of AseraCare, Plaintiff has adequately pled falsity.
The Government, however, also notes that other courts have refused to follow AseraCare's line of reasoning, including a decision within the Northern District of Georgia. See Dkt. No. [74] at 14-16. In United States ex rel. Polukoff v. St. Mark's Hospital, for example, the Tenth Circuit held that, consistent with the FCA's intent to "reach all types of fraud ... that might result in financial loss to the Government," "it is [indeed] possible for a medical judgment to be false or fraudulent as proscribed by the FCA." 895 F.3d 730, 742 (10th Cir. 2018) (quoting United States v. Neifert-White Co., 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968) ). Judge Murphy in United States v. Adams adopted Polukoff and "concluded that a physician's subjective medical opinions or judgments can be false for purposes of the FCA." 371 F. Supp. 3d 1195, 1211 (N.D. Ga. 2019).
This Court adopts the same position. Defendants insist that whether the cataract procedures and the glaucoma diagnoses and tests "were reasonable and necessary for Dr. Pandya's patients is a matter of medical judgment that rests with Dr. Pandya." Dkt. No. [71] at 12. However, allowing physicians to avoid allegations of fraud by simply subjectively asserting the services were medically necessary cannot be the standard for determining falsity. See United States ex rel. Ryan v. Lederman, No. 04-CV-2483, 2014 WL 1910096, at *6 (E.D.N.Y. May 13, 2014) ("[i]f physician determinations of reasonableness and necessity controlled claim payment, there would be no need for a claim reimbursement process at all."). Therefore, the Government has adequately pled falsity for its FCA claims, including medical procedures billing that solely turn on medical necessity.
In addition, Defendants contend that the Government has failed to allege Defendants' claims were not "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1)(A) because the Government has "completely fail[ed] to identify any binding law or regulation that prohibits Dr. Pandya ... from submitting claims for the ophthalmologic services at issue in this case." Dkt. No. [71] at 13. Defendants argue the Government's references to National Coverage Determination ("NCD") guidelines are insufficient to establish liability *1221 under the FCA and that, because the Department of Justice ("DOJ") has specifically prohibited its litigators from using such guidelines to establish civil liability, the Court here should preclude the Government from doing so as well. Id. at 13, 15-16.
For the same reasons articulated by the Adams Court, these contentions fail. Adams, 371 F. Supp. 3d at 1213. Defendants contend the Government has failed to adequately define "reasonable and necessary" but do not direct the Court to any legal authority indicating that failing to do so would preclude the Government's claim. Additionally, "[a]n NCD is a determination by the Secretary [of the Department of Health and Human Services] of whether a particular item or service is covered nationally under Medicare." 42 C.F.R. § 405.1060. The United States Court of Appeals for the Third Circuit explained:
The Secretary of Health and Human Services decides "whether a particular medical service is 'reasonable and necessary' ... by promulgating a generally applicable rule or by allowing individual adjudication." Heckler v. Ringer, 466 U.S. 602, 617, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (emphasis added). The former course involves a "national coverage determination" that announces "whether or not a particular item or service is covered nationally." 42 U.S.C. § 1395ff(f)(1)(B). In the absence of a national coverage determination, local Medicare contractors may issue a "local coverage determination" that announces "whether or not a particular item or service is covered" by that contractor. Id. § 1395ff(f)(2)(B).
Polukoff, 895 F.3d at 735 (alteration and emphasis in original). "NCDs are considered substantive rules, which carry the force of law." Advanced Diabetes Treatment Ctrs., L.L.C. v. Sebelius, No. 09-61698-ZLOCH/GOODMAN, 2011 WL 13268857, at *4 (S.D. Fla. Apr. 7, 2011). Defendants thus cannot avoid liability by merely contending that NCDs are non-binding.
Moreover, based on the language of the DOJ Memorandum itself, the Court cannot conclude that the DOJ Memorandum precludes these claims. See Memorandum on Limiting Use of Agency Guidance Documents in Affirmative Civil Enforcement Cases from Rachel Brand, Associate Attorney General, to Heads of Civil Litigating Components United States Attorneys (Jan. 25, 2018) at 2 (stating that the memorandum "is not intended to, does not, and may not be relied upon to, create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal") (available at https://www.justice.gov/file/1028756/download).
Defendants' reliance on AseraCare and on the absence of a regulation defining "reasonable and necessary" does not undermine the Complaint's falsity allegations regarding cataract procedures and glaucoma diagnoses and tests. Indeed, the Complaint alleges that Defendants falsely diagnosed and performed cataract surgery on patients whose visual acuity did not warrant the surgery, falsely "upcoded" cataract procedures as complex when they were in fact routine, falsely billed Medicare for glaucoma-related testing for patients who did not have a valid glaucoma diagnosis, and falsely billed Medicare for diagnostic glaucoma tests that were never interpreted or never performed. See Dkt. No. [60] ¶¶ 51, 72, 118, 130.
A physician's latitude in medical judgment does not nullify the Complaint's falsity allegations. See Polukoff, 895 F.3d at 742. Thus, the Court finds the Government has adequately pled falsity.
*1222 2. Scienter Element
Next, Defendants allege the Government has failed to show Dr. Pandya acted with the requisite knowledge required under 31 U.S.C. § 3729(a)(1)(A). See Dkt. No. [71] at 16. The FCA defines "knowing" and "knowingly" as meaning that a person "has actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). Further, the terms "require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B).
Since Federal Rule of Civil Procedure 9(b) provides "[m]alice, intent knowledge, and other conditions of a person's mind may be alleged generally" and since the Complaint alleges Defendants submitted false claims with actual knowledge, reckless indifference, or deliberate ignorance to the falsity associated with such claims, the Government satisfies the scienter element. Fed. R. Civ. P. 9(b) ; see Dkt. No. [60] ¶ 222. But even more than its general allegation of scienter, the Government provides circumstantial evidence that supports a plausible inference of actual knowledge or, at a minimum, deliberate ignorance or reckless disregard of the falsity. See Dkt. No. [74] at 24. The Government has alleged, for instance, the dramatic increase in Medicare billing following the retirement of Dr. Pandya's former employer, notices from multiple insurers of excessively high charges, and diagnoses rates of glaucoma-related conditions more than ten times the prevalence rate for glaucoma in Georgia. Id. at 25-26. Accordingly, the Government has adequately pled scienter in its Complaint.
Since the Government has adequately pled both the falsity and scienter elements, Defendants' Partial Motion to Dismiss Count I (Presenting False Claims) and Count II (Making or Using a False Record or Statement) is DENIED.
B. Partial Motion to Dismiss Mistake of Fact and Unjust Enrichment Counts
Defendants also assert that the Government's claims for Mistake of Fact and Unjust Enrichment should be dismissed for: (1) providing duplicative recoupment with the FCA claims; (2) failing to specify a federal or state law cause of action; and (3) failing to state a claim. See Dkt. No. [71] at 21-22.
With respect to Defendants' claim that these counts allow for duplicative recovery, pleading in the alternative is appropriate. See Adams, 371 F. Supp. 3d at 1216 ("[E]ven though such claims may be duplicative of Plaintiff's FCA claims, Plaintiff can plead its claims in the alternative.). Thus, the mere fact that these claims seek to remedy the same harm is not problematic at the pleading stage.
Second, Defendants contend that the Government's failure to specify a federal or state law cause of action for its Mistake of Fact and Unjust Enrichment claims is alone a sufficient ground for dismissal. See Dkt. No. [71] at 21. This Court, however, does not find Plaintiff's failure to cite a federal or state law cause of action fatal to Plaintiff's claims. Rather, this Court applies federal common law to the Government's Mistake of Fact and Unjust Enrichment claims. See Adams, 371 F. Supp. 3d at 1216 ("The Court ... applies federal common law to the unjust enrichment and payment by mistake claims.").
Last, Defendants contend that the Government has failed to state a claim under both its Mistake of Fact and Unjust Enrichment claims. See Dkt. No. [71] at 22-23. To state a claim for Mistake of *1223 Fact, the Government must prove that "(1) payments were made; (2) under the belief that they were properly owed; (3) that belief being erroneously formed; and ( 4) the mistaken belief was material to the decision to pay." Adams, 371 F. Supp. 3d at 1217. In addition, to state a claim for Unjust Enrichment, the Government must prove that "(1) [it] had a reasonable expectation of [re]payment; (2) [the defendant] should reasonably have been expected to [re]pay; [and] (3) society's reasonable expectations of person and property would be defeated by nonpayment." Id. For the reasons outlined in the preceding paragraphs on falsity and scienter, the alleged fraudulent circumstances under which Defendants received Medicare reimbursement adequately support the Government's claims of both Mistake of Fact and Unjust Enrichment. Defendants' Partial Motion to Dismiss Count III (Payment by Mistake of Fact) and Count IV (Unjust Enrichment) is therefore DENIED.
C. Motion to Strike Paragraphs 230-235 of Complaint
Defendants move to strike Paragraphs 230-235 of the Complaint as immaterial, impertinent, and irrelevant pursuant to Federal Rule of Civil Procedure 12(f). See Dkt. No. [71] at 26; Fed. R. Civ. P. 12(f). Defendants have failed to meet the heavy burden prescribed by Rule 12(f). While not directly related to the Government's false claim submission allegations, as conceded in Paragraph 230 of Complaint, the Paragraphs at issue do indeed have some bearing on the subject matter of the present litigation-namely, proof of prior fraudulent activity supporting the inherently intangible scienter element of the FCA claims and the absence of mistake. See Dkt. No. [60] ¶ 230. This Order does not, however, preclude Defendants from filing a motion in limine , as appropriate, to exclude evidence it believes would be unduly prejudicial at trial. Therefore, Defendants' Motion to Strike Paragraphs 230-235 is DENIED.
IV. CONCLUSION
In light of the foregoing, Defendants' Partial Motion to Dismiss and to Strike [71] is DENIED.
IT IS SO ORDERED this 9th day of July, 2019.